UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| Jeffrey Berry, <br><br> Plaintiff <br><br> v. <br><br> The Davey Tree Expert Company, <br><br> Defendant | **DEMAND FOR JURY TRIAL** |

# COMPLAINT AND JURY DEMAND

## Parties

1. Plaintiff Jeffrey Berry ("Mr. Berry" or "Plaintiff") is a male resident of the State of Maine, residing at 122 Thyngs Mill Road, North Waterboro, ME 04061.

2. Defendant The Davey Tree Expert Company (the "Company" or "Defendant") is a for-profit corporation that, upon information and belief, is incorporated in the State of Ohio and its principal office is located at 1500 N. Mantua St., Kent, OH 44240. During all relevant times, the Company retained premises in, and conducted business in, Maine, including by operating a facility at 749 Warren Avenue, Portland, ME 04103.

## Jurisdiction and Venue

3. The court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1331 because Plaintiff has brought claims pursuant to the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §621 *et seq.*. The court may exercise supplemental jurisdiction over the Plaintiff's state law claims. 28 U.S.C. §1367.

4. Venue is appropriate in the District of Maine as the acts or omissions giving rise to the claims in this Complaint occurred in the District of Maine.

5. This court has personal jurisdiction over the Company because the Company engaged in and transacted business in the State of Maine, including by owning, managing and/or operating facilities in Maine, and by employing the Plaintiff in Maine, and the Plaintiff's causes of action stem largely from business transactions and employment actions by the Company within the State of Maine. The Company is registered with the Maine Department of State as a foreign corporation operating in the State of Maine, including with a DOS process address located in the State of Maine (at 128 State St., #3, Augusta, 04330). Indeed, the Plaintiff was employed by the Company in the State of Maine at a facility located in Portland, ME, was managed by the Company in the State of Maine, and was terminated by the Company in the State of Maine.

## Statement of Facts

6. Mr. Berry was born in 1962.

7. On or around February 28, 2013, Mr. Berry was hired by the Company as a tree trimmer for a crew operating out of a facility in Portland, ME.

8. At all relevant times, Mr. Berry worked at this Portland, ME location of the Company (located at 749 Warren Avenue, Portland, ME 04103), which constituted his worksite.

9. At all relevant times, the Company employed 20 or more employees for 20 or more calendar weeks in the preceding 12 months.

10. Indeed, at all relevant times, the Company employed 500 or more employees for 20 or more calendar weeks in the preceding 12 months.

11. Accordingly, the Company was a covered employer under the relevant state and federal anti-discrimination statutes, including the ADEA.

12. At all relevant times, Mr. Berry was qualified for his position and his work performance was satisfactory. Indeed, at all times Mr. Berry could perform all essential functions of his position, with or without accommodations.

13. Around the fall of 2017, representatives from the Company's corporate headquarters inspected the premises and raised concerns that the Portland facility seemingly had no staff who would be able to perform mechanic duties if necessary (which involved "shop work" such as changing blades on machines, replacing oil, light replacement, etc.).

14. Kevin Bosworth ("Mr. Bosworth"), the then-general manager of the Company facility, then made the decision, based on Mr. Berry's extensive work history, that Mr. Berry would perform both his tree trimming duties and mechanic work.

15. Importantly, at all times Mr. Berry remained in the tree trimmer job (and continued to perform tree trimmer duties) and at no point was Mr. Berry ever classified or reclassified as a mechanic.

16. Further, other tree trimmers performed mechanic work as well, when necessary, without being classified as mechanic employees.

17. For instance, Chris Plant ("Mr. Plant"), another tree trimmer, performed mechanic work when needed.

18. Mr. Plant is in his 20s.

19. Further, Pete Kowalski ("Mr. Kowalski"), a tree trimmer, performed mechanic work when needed.

20. Mr. Kowalski is in his 30s.

21. On or around March 26, 2020, Mr. Berry was informed by Mr. Bosworth that the Company would be temporarily closing and all staff temporarily furloughed due to the spread of the novel coronavirus (COVID-19) pandemic.

22. Mr. Bosworth further informed Mr. Berry that Mr. Berry was to be temporarily furloughed, effectively immediately, allegedly along with all other staff.

23. Accordingly, Mr. Berry was furloughed without pay, although he remained an employee of the Company until September 2020.

24. Upon information and belief, despite Mr. Bosworth's proclamations that everyone would be furloughed, the Company remained open and one or more employees continued their employment.  This fact was not known to Mr. Berry at the time, and Mr. Berry accordingly believed the (false) statements of Mr. Bosworth that all staff were being temporarily furloughed.

25. Later, the Company's lawn maintenance employee, Terri Paige ("Ms. Paige"), told Mr. Berry that the Company would be continuing to service clients and thus had not furloughed all employees.

26. After receiving this information, Mr. Berry looked into the issue, and in or around May 2020, learned that employees retained by the Company (who were not furloughed or who were rapidly recalled) were younger than Mr. Berry.

27. Upon information and belief, the younger tree trimmer Mr. Kowalski was not laid off or furloughed during this period.

28. Upon information and belief, the younger Ian Baxter ("Mr. Baxter"), another tree trimmer, was not laid off or furloughed during this period.

29. Mr. Baxter is in his 20s.

30. Upon information and belief, the younger tree trimmer Mr. Plant was not laid off or furloughed in this period.

31. Mr. Berry had seniority over one or more of the tree trimmers who were not furloughed at this time, including Mr. Baxter and Mr. Kowalski.

32. Upon learning this information, Mr. Berry realized in or around May 2020, for the first time, that he had been discriminated against by being furloughed and not recalled while other younger employees were not furloughed and/or were promptly recalled. This was the first time that Mr. Berry had notice of the discriminatory nature of the adverse action taken against him.

33. Additionally, in or around May 2020, Mr. Berry was contacted by one of the groundsmen at the Company, Pete Jankowiak ("Mr. Jankowiak"), who told Mr. Berry that he overheard that the Company would not be bringing back Mr. Berry because they would be filling his job soon with a new hire.

34. In May 2020, Mr. Berry called Mr. Bosworth out of concern for his employment status. Mr. Bosworth did not answer, so Mr. Berry drove down to the Company premises.

35. Mr. Bosworth looked surprised to see Mr. Berry, and Mr. Berry then raised protected concerns about younger employees not being laid off, or being recalled to work before him, including tree trimmers with less experience than Mr. Berry had.

36. Mr. Berry additionally raised protected concerns that it appeared the Company was trying to hire new younger employees to replace him.

37. Mr. Bosworth told Mr. Berry that his employment with the Company had not ended and that he would be brought back once coronavirus restrictions were lifted and there was a greater need.

38. Indeed, Mr. Berry and Mr. Bosworth then discussed Mr. Berry's potential return to his job at the Company.

39. Mr. Berry reiterated to Mr. Bosworth how he was eager to return to work. Mr. Bosworth told Mr. Berry that the Company would be "fine" within a few weeks and they could discuss his return to employment then.

40. While Mr. Berry was in the shop, Mr. Berry noticed that another younger tree trimmer, Mr. Plant, was working on equipment and appeared to be performing both his regular duties and mechanic/shop work duties without a furlough period. Mr. Berry had previously performed many such duties.

41. It struck Mr. Berry as odd that of all the tree trimmers, the younger Mr. Plant was not furloughed and was now actively working, even though the older Mr. Berry had been with the Company longer than he had been.

42. On or around June 10, 2020, Mr. Berry called Mr. Bosworth and again raised protected concerns that younger employees were brought back before him.

43. Mr. Berry asked when he could return to the Company. Mr. Bosworth simply told Mr. Berry that he (Mr. Berry) would eventually be allowed to return but claimed that he still did know when the Company would bring Mr. Berry back "based on Covid needs."

44. On or around June 18, 2020, Mr. Berry again spoke with Mr. Bosworth and raised protected concerns regarding to the Company's refusal to let him timely return to work, despite the fact that the Company had allowed many younger employees to return already, including those with less seniority than Mr. Berry.

45. At this time, Mr. Bosworth told Mr. Berry he would be bringing back more tree trimmers "soon," including Mr. Berry.

46. On or around August 26, 2020, Mr. Berry spoke with Mr. Bosworth. This time, Mr. Bosworth acted odd and asked Mr. Berry skeptically whether he (Mr. Berry) still "had it in [him]" to do tree trimmer work, clearly making reference to Mr. Berry's age.

47. Mr. Berry told Mr. Bosworth that he was ready to return and eager to work, and Mr. Berry told him he would be able to perform all essential functions of his job responsibilities, just as he always had.

48. Mr. Bosworth seemed disappointed by Mr. Berry's eagerness to return, but eventually agreed to set a return date from Mr. Berry's furlough of October 5, 2020.

49. Mr. Bosworth in fact told Mr. Berry to stop by the office to begin his paperwork to return from furlough.

50. On or around September 8, 2020, Mr. Berry stopped by the Company storefront to speak with Mr. Bosworth's secretary, Debbie Catterson ("Ms. Catterson"), to receive his paperwork to return to work.

51. Ms. Catterson told Mr. Berry she would take care of the paperwork on his behalf.

52. Shortly thereafter, on or around September 17, 2020, Mr. Bosworth shockingly left Mr. Berry a voicemail saying he had hired "a couple of younger guys," so the Company had no need for Mr. Berry anymore.

53. This was the first time Mr. Bosworth had mentioned to Mr. Berry that the Company was actively hiring or looking to hire employees to perform duties Mr. Berry was capable of (and experienced in) performing.

54. Indeed, Mr. Bosworth's voicemail made clear that Mr. Berry was terminated as of September 17, 2020 because of the Company's decision to instead hire "younger guys."

55. Mr. Bosworth and the Company actively misled Mr. Berry into believing he was on a Company-wide furlough and would be brought back based on need when, in truth, there was a need for Mr. Berry's position, hence the Company hiring new employees.

56. Upon information and belief, the employee(s) hired to replace Mr. Berry were substantially younger than Mr. Berry and were under 40 years old.

57. On or around September 24, 2020, Mr. Bosworth again left Mr. Berry a voicemail confirming that Mr. Berry would not be hired back from his layoff. The Company thus refused to recall and/or re-hire Mr. Berry despite prior promises to do so.

58. Accordingly, Mr. Berry was involuntarily terminated from his employment on or around September 17, 2020.

59. Upon information and belief, Mr. Berry was the only tree trimmer in his facility permanently let go from the Company (and not recalled) during this period.

60. Because Mr. Berry was terminated (and indeed, replaced in his role as a tree trimmer by younger hires) before his given return date of October 5, 2020, it became evident to Mr. Berry at the time of this permanent decision that the Company acted with discriminatory animus in terminating his employment and refusing to recall him.

61. Notably, of seven tree trimmers at his Portland, ME, location, Mr. Berry was the oldest tree trimmer.

62. James Flag ("Mr. Flag") was the next oldest tree trimmer, and he was approximately in his early 40s and thus much younger than Mr. Berry.

63. The other tree trimmers at this location were predominantly in their 20s and 30s.

64. Furthermore, of seven tree trimmers at his location, Mr. Berry had the second-longest tenure at the Company, having worked there for more than seven years.

65. Importantly, there was no purported lack of work during the relevant period, as Mr. Berry was replaced in his position as a tree trimmer by a younger employee, as Mr. Bosworth stated in his voicemail, and Mr. Berry's position was not eliminated.

66. Mr. Berry had been performing all functions of his job in a fully satisfactory manner without complaint or performance concerns for years prior to his termination.

67. On or around February 19, 2021, Mr. Berry timely filed a Charge of Discrimination with the Maine Human Rights Commission ("MHRC"), which was cross-filed with the United States Equal Employment Opportunity Commission ("EEOC").

68. On or around December 3, 2021, Mr. Berry timely filed an amended Charge of Discrimination with the MHRC and EEOC.

69. On or around December 17, 2021, Mr. Berry informed the MHRC of his intent to withdraw his charge to pursue his claims in court.

70. On or around January 11, 2022, the MHRC issued a dismissal letter to Mr. Berry with the right to pursue his claims in court.

71. On or around January 26, 2022, Mr. Berry informed the EEOC of his intent to withdraw his charge to pursue his claims in court.

72. On or around March 3, 2022, the EEOC issued Mr. Berry a right to sue letter.

73. This lawsuit is timely filed.

### COUNT I
### (Age Discrimination in Violation of the Maine Human Rights Act)
### Mr. Berry v. The Company

74. Mr. Berry incorporates all paragraphs above and below as if set forth fully herein.

75. The Company is a covered entity under the Maine Human Rights Act because it was the employer of Mr. Berry.

76. Mr. Berry was born in 1962 and, at all relevant times, was over 40 years old.

77. The Company, including, but not limited to, through their agents, discriminated against the Plaintiff with respect to his compensation, terms, conditions, or privileges of employment, because of the Plaintiff's age and/or because Plaintiff was over 40 years old.

78. Further, the Company subjected the Plaintiff to adverse actions, including, but not limited to, by altering Mr. Berry's role in the workplace, subjecting Mr. Berry to a furlough and/or layoff, failing to recall Mr. Berry from furlough, refusing to re-hire Mr. Berry, and terminating Mr. Berry's employment, all because of the Plaintiff's age.

79. For example, Mr. Berry's similarly situated younger coworkers (including, but not limited to, Mr. Plant and Mr. Kowalski) were not similarly furloughed or terminated as Mr. Berry, including those coworkers (such as Mr. Plant and Mr. Kowalski) with less tenure at the Company.

80. The Company replaced Mr. Berry with new tree trimmer hires who were younger than Mr. Berry.

81. Indeed, Mr. Bosworth left a voice message for Mr. Berry indicating Mr. Berry's employment was to be terminated because the Company recently hired new younger staff to replace him.

82. The Company acted with malice and/or with reckless indifference to the state protected rights of Mr. Berry.

83. As a direct and proximate result of the Defendants' violations of the Maine Human Rights Act, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

84. The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), reduced earning capacity, other financial damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, punitive damages, interest, attorneys' fees, and costs.

## COUNT II
### (Age Discrimination in Violation of 29 U.S.C. §§ 621 et seq.)
### Mr. Berry v. The Company

85. Mr. Berry incorporates all paragraphs above and below as if set forth fully herein.

86. The Company is an employer under the definition of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA") because the Company is engaged in an industry affecting commerce and has twenty or more employees for each working day in each of twenty or more calendar weeks during the relevant years.

87. Mr. Berry was born in 1962 and, at all relevant times, was over 40 years old.

88. The Company, including, but not limited to, through their agents, discriminated against the Plaintiff with respect to his compensation, terms, conditions, or privileges of employment, because of the Plaintiff's age and/or because Plaintiff was over 40 years old.

89. Further, the Company subjected the Plaintiff to adverse actions, including, but not limited to, by altering Mr. Berry's role in the workplace, subjecting Mr. Berry to a furlough and/or layoff, failing to recall Mr. Berry from furlough, refusing to re-hire Mr. Berry, and terminating Mr. Berry's employment, all because of the Plaintiff's age.

90. For example, Mr. Berry's similarly situated younger coworkers (including, but not limited to, Mr. Plant and Mr. Kowalski) were not similarly furloughed or terminated as Mr.

Berry, including those coworkers (such as Mr. Plant and Mr. Kowalski) with less tenure at the Company.

91.     The Company replaced Mr. Berry with new tree trimmer hires who were younger than Mr. Berry.

92.     Indeed, Mr. Bosworth left a voice message for Mr. Berry indicating Mr. Berry's employment was to be terminated because the Company recently hired new young staff.

93.     The Company willfully violated the ADEA because the Company knew or should have known its conduct was prohibited by Federal law and/or the Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Berry.

94.     As a direct and proximate result of the Company's violations of the ADEA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

95.     The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including back pay and front pay), reduced earning capacity, other financial damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

### COUNT III
**(Retaliation in Violation of the MHRA)**
**Plaintiff v. The Company**

96.     The Plaintiff incorporates all Paragraphs above and below as if set forth fully herein.

97. The Plaintiff engaged in protected activity under the MHRA, including, but not limited to, raising protected concerns regarding discriminatory conduct (raising concerns he was not being brought back from furlough as fast as younger employees, including those with less seniority).

98. The Company retaliated against Mr. Berry for engaging in protected activity by subjecting Mr. Berry to adverse actions, including, but not limited to, by altering Mr. Berry's role in the workplace, subjecting Mr. Berry to a furlough and/or layoff, failing to recall Mr. Berry from furlough, refusing to re-hire Mr. Berry, and terminating Mr. Berry's employment.

99. By further example, Mr. Berry's similarly situated younger coworkers (including, but not limited to, Mr. Plant and Mr. Kowalski) were not similarly furloughed or terminated as Mr. Berry, including those coworkers (such as Mr. Plant and Mr. Kowalski) with less tenure at the Company.

100. The Company acted with malice and/or with reckless indifference to the state protected rights of Mr. Berry.

101. As a direct and proximate result of the Company's violations of the MHRA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

102. The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), diminished earning capacity, injury to reputation, other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), punitive damages, attorneys' fees, and costs.

## COUNT IV
### (Retaliation in Violation of 29 U.S.C. §§ 621 et seq.)
### Mr. Berry v. The Company

103. The Berry herein incorporates all allegations set forth above and below.

104. Mr. Berry engaged in protected activity under the ADEA, including, but not limited to, by opposing, expressing protected concerns, and/or engaging in other protected activity related to the discriminatory actions taken by the Company due to Mr. Berry's age.

105. The Company retaliated against Mr. Berry and/or discriminated against Mr. Berry by subjecting him to adverse actions, including, but not limited to, by altering Mr. Berry's role in the workplace, subjecting Mr. Berry to a furlough and/or layoff, failing to recall Mr. Berry from furlough, refusing to re-hire Mr. Berry, and terminating Mr. Berry's employment for opposing an act or practice made unlawful by the ADEA.

106. By further example, Mr. Berry's similarly situated younger coworkers (including, but not limited to, Mr. Plant and Mr. Kowalski) were not similarly furloughed or terminated as Mr. Berry, including those coworkers (such as Mr. Plant and Mr. Kowalski) with less tenure at the Company.

107. The Company willfully violated the ADEA because the Company knew or should have known its conduct was prohibited by Federal law and/or the Company acted with malice and/or with reckless indifference to the federally protected rights of Mr. Berry.

108. As a direct and proximate result of the Company's violations of the ADEA, the Plaintiff has suffered and continues to suffer damages, including, but not limited to, lost

compensation and benefits, reduced earning capacity, pain and suffering, loss of enjoyment of life, and emotional damages.

109. The Plaintiff seeks all damages to which he is entitled, including, but not limited to, lost compensation and benefits (including, but not limited to, back pay and front pay), other monetary damages, compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses), injury to reputation, diminished earning capacity, liquidated (i.e. double) damages, interest, attorneys' fees, and costs.

WHEREFORE, the Plaintiff, Jeffrey Berry, respectfully requests that this honorable court:

A. Schedule this matter for trial by jury;

B. Find the Defendant liable on all counts;

C. Award the Plaintiff his lost compensation and benefits (including, but not limited to, back pay and front pay);

D. Award the Plaintiff other monetary damages, including for monetary losses resulting from his termination, as well as injury to reputation;

E. Award the Plaintiff emotional distress damages;

F. Award the Plaintiff compensatory damages (including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses);

    G.  Award the Plaintiff liquidated damages;

    H.  Award the Plaintiff punitive damages;

    I.  Award the Plaintiff his attorney's fees;

    J.  Award the Plaintiff interest and costs;

    K.  Award the Plaintiff all other damages to which he is entitled; and

    L.  Grant such further relief as is just and equitable.

Respectfully Submitted,

Jeffrey Berry

By his attorneys,

THE LAW OFFICES OF WYATT & ASSOCIATES P.L.L.C

Date: March 4, 2022            By:    */s/ Chandan Panigrahi*

Benjamin J. Wyatt, ME # 6118
BWyatt@Wyattlegalservices.com

Michael Varraso, ME # 6076
MVarraso@Wyattlegalservices.com

Chandan Panigrahi, ME # 6504
Chandan@wyattlegalservices.com

The Law Offices of Wyatt & Associates, P.L.L.C.
17 Elm Street, Suite C211
Keene, NH 03431
Telephone: (603) 357-1112
Facsimile: (603) 685-2868